UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVIS BUICK GMC, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 17-1151 |
| SCOTT A. RIDDLE, INC., | ) |
| Defendant. | ) |

# ORDER AND OPINION

This matter is now before the Court on Defendant's Motion [14] to Dismiss and Motion [17] for Leave to File Motion to Dismiss. For the reasons set forth below, Defendant's Motion [17] for Leave to File is GRANTED and the Motion [14] to Dismiss is GRANTED as to Count 2 of Plaintiff's Complaint and DENIED as to the remaining claims.

## BACKGROUND

*(1) Procedural History*

Plaintiff, Davis Buick GMC, Inc. ("Davis"), is a car dealership incorporated in Illinois with its principal place of business in Canton, Illinois. Defendant, Scott A. Riddle, Inc. ("Riddle"), is a Michigan corporation in the business of consulting. Davis filed this breach of contract action against Riddle in Fulton County state court on March 14, 2017. See Complaint, Doc.1-1, at 3. Riddle removed the action from Fulton County to the Central District of Illinois on April 13, 2017 on the basis of diversity jurisdiction. Doc. 1. On May 11, 2017, Davis moved to remand, citing a forum selection clause in the contract. Doc. 6. This Court denied the motion on May 25, 2017 because the language in the forum selection clause was permissive—it did not

1

make Fulton County state court the exclusive venue for bringing an action under the contract. Doc. 10.

On July 10, 2017, Riddle moved to dismiss under Federal Rules of Civil Procedure 12(b)(7) (failure to join a required party under Rule 19) and 12(b)(6) (failure to state a claim). Doc. 14. Riddle claims that Edwards Architects, LLC ("Edwards"), an Illinois Limited Liability Company, is a required party. Further, Riddle argues that Davis's Complaint failed to state a claim on each of the four counts: breach of contract, breach of fiduciary duty, negligent misrepresentation, and consumer fraud. Davis responded, arguing that Riddle's Rule 12 Motion was untimely, Edwards is not a required party, and that it properly alleged each of the four counts in the Complaint. Docs. 15, 16.

On August 1, 2017, Riddle filed a Motion for Leave to File, wherein he concedes that his Motion to Dismiss was untimely by 26 days but asks the Court to consider it nonetheless, citing computer problems. Doc. 17. Davis responded, arguing that the Motion to Dismiss was filed well beyond 7 days from the Notice of Removal (see Fed. R. Civ. P. 81(c)(2)(C)), and, assuming that the clock did not begin to run while the Motion to Remand was pending, it was still filed well beyond the 21 days from the Order denying remand. Davis argues that opposing counsel's computer problems do not justify such a large delay, and requested oral argument on the motions. Doc. 18.

Finally, Riddle filed a "Response to Plaintiff's Memorandum and Response to Defendant's Motion to Dismiss," i.e., a Reply, on August 11, 2017. Doc. 19; but see Local Rule 7.1(B)(3) (no reply briefs authorized without leave of court). On October 2, 2017, the Court heard arguments by the Parties on the issues raised in Defendant's motions and Plaintiff's

responses. During oral argument, Defendant withdrew his Motion to Dismiss as it related to failure to join a required party under Fed. R. Civ. P. 12(b)(7).

*(2) Plaintiff's Complaint*

    *(a) The Davis-Riddle Agreement*

The following information is derived from Plaintiff's Complaint and the exhibits attached thereto. Doc. 1-1, at 3–18. In 2011, General Motors ("GM") implemented the GM Facility Image ("GMFI") program, which required GM dealerships to undertake certain cosmetic and substantive improvements to their facilities and dealerships in exchange for compensation. GM provided its dealerships with Facility Image Design Intent Documentation ("DID"), which set forth the specifications—such as finishes, furnishing, lighting, and branded design elements for the interior and exterior of the facility—required to be implemented by Davis to comply with the GMFI program. GM's program manager, Gensler, would review and approve the implementation of the specifications. Because of the technical nature of the DID requirements, GM recommended that dealers utilize a representative to oversee the implementation of the GMFI program. Thus, Davis entered into a Letter of Agreement for Owner's Representative Project Management Services with Riddle (the "Riddle Agreement") on June 8, 2011. According to the Complaint, in exchange for $35,000, Riddle was to perform the following duties:

    a. Assist Davis to establish the Facility Team;
    b. Facilitate and interface between the Facility Team through regular meetings, correspondence, and assignments;
    c. Represent Davis to the City of Canton, Illinois for permits and necessary approvals for project elements;
    d. Assist Davis to define and identify Project requirements, including building elements, amenities, and fixtures needed to support Davis' business operations at the facility;
    e. Review Project requirements in connection with their impact on the Facility structure, process, schedule, budget, and anticipated future needs;
    f. Report on progress of Project Requirements to Davis with bi-weekly on-site project meetings;

      g. Regularly update cost projections during the planning process;
      h. Provide estimated cost projections as project requirements are developed;
      i. Provide an updated timeline of project logistics with dates for:
            i. Gensler Enrollment/ As-Builds/ On-Site Consult/ DID process;
            ii. Planning/ Programming/ Construction Document development;
            iii. City of Canton Approvals and Permits;
            iv. Site Development;
            v. Facility Construction;
            vi. EBE approval with Gensler;
            vii. The final Punch list;
      j. Work as Davis' representative with Davis' architect in the preparation of final preliminary plans of the Site and Facility based on the project requirements;
      k. Ensure General Motors EBE Program approval for the project;[1]
      l. Monitor development of design details of Davis' design professionals and review against the Project Requirements to determine effect of changes on the Preliminary Cost Estimates;
      m. Update project requirements by incorporating proposed changes to design of Project;
      n. Review procedures and activities to complete work in a timely fashion, to implement cost-effective methods, and to ensure compliance of requirements for GM Design Image approval;
      o. Review and value engineer building elements and image elements for cost reduction opportunities;
      p. Identify equipment suppliers that would be appropriate and effective for Davis; and
      q. Supervise asset movement during move period.

Complaint at 4, Doc. 1-1, at 6.

*(b) The Construction*

Construction began on November 7, 2012, after multiple non-compliant construction document reviews. During the verification phase, Davis submitted the first request for project approval to Gensler, which was found non-compliant on August 22, 2014. The second and third requests were completed and submitted by Riddle and were found non-compliant on May 29, 2015, and October 1, 2015. According to Plaintiff, Gensler identified problems with: (a) non-complaint flashing and missing ACM cladding over the brick on the façade of Davis's

---

[1] The actual language of the contract is prefaced with "Coordinate the design development work with Davis design professionals for the entire project. Design work to include considerations for…" See Riddle Agreement, at 3.

dealership; (b) non-compliant lighting in the showroom and service area; (c) non-complaint glass on the storefront; and (d) non-compliant paint scheme for the service area. *Id*. at 5–6.

Plaintiff alleges that it tendered all required payments to Defendant under the Riddle Agreement and that it was required to spend significant amounts to remediate the problems. According to Plaintiff, although Riddle promised that an exception for the lighting requirements would be obtained, Davis was forced to replace the lighting at significant expense. When Davis notified Riddle of the problems, Riddle responded that the problems were already corrected, would be corrected in accordance with GM's standards, or that an exception would be approved. According to Plaintiff, none of the assertions regarding exceptions were true when Riddle made them, although some aspects of the process later received approval from Gensler as exceptions. The construction concluded in 2015, and the fourth submission of the verification record was found compliant and received final approval on April 25, 2016. *Id*. at 6–7.

*(c) The Davis-Edwards Agreement*

Defendant argues that Edwards, not Riddle, was responsible for the construction problems. Doc. 14. Attached to Defendant's Motion is a copy of the Davis-Edwards Agreement (the "Edwards Agreement"). Doc. 14-1. The Edwards Agreement provided, in relevant part:

> Exterior work shall include construction of a new façade/fascia at the front/sides of the showroom and the entrance to service write-up and a new vehicle delivery addition of approximately 250 s.f. The work includes design and connection details required for demolition and construction. *The work of this agreement is to comply with the new GM facility image standards including the replacement of the showroom storefront glazing and doors, roll-up doors and specification of exterior painting*, as needed.
>
> *Interior work shall include specifications and design details for updating all required interior finishes, furniture and fixtures in customer areas per GM facility image standards, as necessary, including lighting, flooring, furniture, and paint, to brand complaint standards*. The work shall also include removal of the "bull-pen" elevated area as identified in the GM report. *The architect shall assist the client in any attempts to procure exemptions for any existing elements not desired*

5

*to be changed*. It is understood that the work of this agreement does not include redesigning the two non-ADA compliant toilet rooms or the addition of the separation wall between service reception and the service garage.

*The work shall include design development drawings in sufficient detail to gain "design intent approvals from GM and the client* [*Davis*].

\*\*\*

The work shall specifically include:

\*\*\*

iii. Interior design coordination and documentation for all finishes, fixtures and equipment as required by the dealer's franchise agreement.

\*\*\*

a. The work of this project shall produce the following deliverables:

\*\*\*

> ii. *Design Intent submittal Documents for review and approval by Client and the franchise Architect – this set of plans shall include all Architectural and interior design drawings, specifications and schedules*.
> iii. Plan Review Documents for submittal to the various authorities having jurisdiction for Plan Review – this set of plans shall include all Architectural, Structural, Interior Design, Mechanical and Electrical Drawings and specifications.

Doc. 14-1, at 1–5 (emphasis added).

**LEGAL STANDARD**

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. See *Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rule of Civil Procedure 8(e). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009). For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and all well-pleaded factual allegations are taken as true. *Albright v.*

6

*Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

**ANALYSIS**

*(1) Defendant's Motion for Leave to File Motion to Dismiss*

Federal Rule of Civil Procedure 81(c) provides the rules for pleading in actions removed from state court. Under that rule, a defendant must answer or present other defenses within the longest of the following periods: "(A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief; (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or (C) 7 days after the notice of removal is filed." Fed. R. Civ. P. 81(c)(2). Here, Defendant was served in March 16, 2017, and the Notice of Removal was filed on April 13, 2017. Defendant's Motion to Dismiss, filed on July 10, 2017, is thus untimely under any of the time periods set forth in Rule 81.

Although Defendant's Motion to Dismiss is untimely, two considerations weigh in favor of considering it nonetheless. First, it appears that the Federal Rules of Civil Procedure do not indicate whether the time to file a motion under Rule 12 is tolled or otherwise reset during the pendency of a motion to remand. Second, Defendant has acknowledged that his Motion was filed past the proscribed period and has submitted an affidavit explaining the law firm's ongoing computer issues. See Doc. 17-1. Accordingly, Defendant's Motion for Leave to file is granted and the Court will proceed to the merits of Defendant's Motion to Dismiss.

*(2) Defendant's Motion to Dismiss for Failure to Join a Required Party Under Rule 19*

At oral argument on October 2, 2017, Defendant withdrew his Motion to Dismiss as it related to failure to join a required party under Fed. R.Civ. P. 12(b)(7). Thus, the Court need not address the arguments raised therein.

*(3) Defendant's Motion to Dismiss for Failure to State a Claim*

    *(a) Breach of Contract*

"In order to sufficiently state a cause of action for breach of contract, a plaintiff must allege … the existence of a valid and enforceable contract, the breach of the contract by the defendant, the performance by the plaintiff and the resultant injury to the plaintiff." *Allstate Ins. Co. v. Winnebago County Fair Ass'n, Inc.*, 475 N.E. 2d 230, 236 (2d Dist. 1985) (citing *Thilman & Co. v. Esposito*, 408 N.E. 2d 1014 (1980)). Defendant argues that Plaintiff's Complaint fails to state a claim for breach of contract. Specifically, Defendant argues that: (1) Plaintiff's claims are merely speculative; (2) there is no specific duty listed in the Riddle Agreement that required Riddle to design, implement, or gain approvals from GM or GM's in-house architectural facilitator (Gensler); (3) there was no breach because the duty to obtain GM approvals rested solely with Edwards, not Riddle; (4) Riddle was not Davis's agent, but merely a consultant whose advise Davis was free to accept or decline; and (5) Plaintiff fails to allege that Riddle failed to consult with Plaintiff or Plaintiff's contractors. See Doc. 14, at 6–18; Doc. 19, at 5–13.

In its Response, Plaintiff argues that it sufficiently alleged numerous instances of Riddle's breach of the contract, including:

> Defendant breached the agreement by misrepresenting the timeframe on which the construction would be completed. Complaint at ¶ 48(d);
>
> Defendant gave incorrect advice regarding the construction and approval of the project and failed to take necessary action and/or provide necessary recommendations to receive approval from Gensler before submitting to Gensler,

8

and failed to fulfill its obligations to coordinate the design work with the professionals to ensure EBE program approval for the project. Complaint at ¶ 48(a, e);

Defendant failed to review activities and complete work in a timely fashion. Complaint at ¶¶ 21, 22, 41, 48(d, f);

Defendant failed to ensure compliance or review the activities and procedures to ensure compliance with GM, as evidenced by the non-complaint flashing and missing ACM, non-compliant lighting, glass, paint, and walls. Complaint at ¶¶ 26-36, 48(a, e); and

Defendant's failure to work with others was a breach of the agreement because he was required to give other design professionals the advice they needed for the agreement.

Doc. 16, at 10.

Taking the above allegations as true, Plaintiff's Complaint sufficiently alleges facts to support a breach of contract claim. Riddle's defense—that it is Edwards, not Riddle, who was responsible for obtaining Gensler's approval—is more appropriately addressed at the summary judgment stage. Moreover, even if Edwards had an independent duty to obtain Gensler's approval, for the purposes of a motion to dismiss, Plaintiff has sufficiently alleged that Riddle failed to either coordinate, facilitate, review, monitor, update, or otherwise ensure that Edwards and other contractors were in-fact fulfilling their responsibilities. In other words, whether or not Plaintiff's allegations are true will depend on facts outside of the Complaint, and thus fall outside the scope of a Motion to Dismiss. Therefore, Defendant's Motion is denied with respect to the breach of contract claim.

*(b) Breach of Fiduciary Duty*

Next, Defendant argues that Plaintiff fails to state a claim for breach of fiduciary duty. "Under Illinois law, to establish a breach of fiduciary duty, the [plaintiff] must establish: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused by

9

the breach." *Timothy & Thomas LLC v. Viral Genetics, Inc.*, 06 C 1813, 2010 WL 3155972, at *21 (N.D. Ill. Aug. 10, 2010) (citing *Neade v. Portes*, 739 N.E. 2d 496 (2000)). Defendant first argues that Plaintiff failed to allege the existence of a statutory enactment or "special relationship" giving rise to a fiduciary duty. Because Defendant did not have a duty to obtain approvals from Gensler, Defendant argues, Plaintiff's allegations that Riddle provided incorrect advice and misrepresented that certain items of construction would be approved by Gensler are insufficient to establish the existence or breach of a fiduciary duty. Doc. 14, at 18–20.

Defendant asserts that under the Riddle Agreement, he was to *assist* Davis with the implementation of the GMFI program. Thus,

> By Plaintiff's own judicial admission, Riddle held the position of assisting Davis, not the position of doing Davis' work for him or that of the general contractor, supervisor of construction, or the architect. Davis also had a concomitant duty under the parties' Agreement: Davis was to hire "contractors to construct and complete the project." Thus, supervision was to be handled by Davis or Davis' contractors who were to "provide a site supervisor." Davis' claims in all Counts appear to involve a lack of construction supervision, (which was 100% the responsibility of Davis and his supervisors and architect). Riddle had no responsibility for any of those roles.
>
> Given Davis' allegations and its judicial admission at paragraph 44 of Count II, Davis has failed to perform its own duties under the Davis/Riddle Agreement, in that Davis' site supervisor(s) and/or architect did not furnish a proper design to obtain the necessary approvals from Gensler before starting construction or during construction.

Doc. 14, at 19–20.

In its Response, Plaintiff argues that its Complaint properly alleged the existence of a fiduciary relationship because it entrusted Riddle to perform the duties under the Riddle Agreement as Plaintiff's agent. In support, Plaintiff points to the title of the agreement—Letter of Agreement for Owner's *Representative* Project Management Services—and the allegation in the Complaint that "Davis and Riddle entered into the above-described [Agreement] under which

10

Riddle would act as Davis' *agent* in securing approval by Gensler for Davis' implementation of the GMFI program." Doc. 16, at 14 (emphasis added).

A fiduciary duty may arise as a matter of law, or from the existence of a particular relationship, such as "where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E. 2d 47, 52 (1st Dist. 2004) (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584, 593 (1997)). "This position of superiority may arise by reason of friendship, agency, or experience." *Id*. "When the relationship between the parties is not one that gives rise to a fiduciary relationship as a matter of law, the party asserting the existence of the relationship has the burden of pleading and proving such by clear and convincing evidence." *Id*., *Schrager v. North Community Bank*, 767 N.E. 2d 376, 385 (2002).

Here, it is questionable whether Riddle was Davis's agent, or that the nature of their dealings gave rise to a fiduciary relationship. However, even assuming that Riddle was a fiduciary and the breach of his fiduciary duties caused Plaintiff's damages, the breach of fiduciary duty claim appears to be duplicative of the breach of contract claim. See *Neade*, 739 N.E. 2d at 496. A claim for breach of contract must allege "the existence of a valid and enforceable contract, the breach of the contract by the defendant, the performance by the plaintiff and the resultant injury to the plaintiff." *Allstate Ins. Co.*, 475 N.E. 2d at 236. "In order to state a claim for breach of fiduciary duty, it must be alleged that a fiduciary duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury of which the plaintiff complains." *Neade*, 739 N.E. 2d at 502. In *Neade*, the Illinois Supreme Court found that the breach of fiduciary duty claim was duplicative of the medical negligence claim because it addressed the same conduct. *Id*. ("[W]e need not recognize a new cause of action for breach of

11

fiduciary duty when a traditional medical negligence claim sufficiently addresses the same alleged misconduct … [t]he breach of fiduciary duty claim in the case at bar would be duplicative of the medical negligence claim."). Here, Plaintiff's breach of contract and breach of fiduciary duty claims address the same alleged misconduct and seek the same damages. Compare Complaint, ¶ 48 at 8, with Complaint, ¶ 48, at 10. Plaintiff's breach of fiduciary duty claim is thus dismissed as duplicative of Count 1.

    *(c) Negligent Misrepresentation*

Defendant argues that Plaintiff fails to state a claim for negligent misrepresentation because "Plaintiff does not plead any facts as to the content of those alleged false statements nor does Plaintiff state when the alleged statements were made." Doc. 14, at 21. "In Illinois, the elements for negligent misrepresentation are (1) the defendant's duty to communicate accurate information; (2) a false statement of material fact; (3) the defendant's carelessness or negligence in ascertaining the truth or falsity of the statement; (4) the defendant's intent to induce the other party to act; (5) the plaintiff's reliance on the false statement; and (6) the plaintiff's damages resulting from that reliance." *Fremont Fin. Corp. v. IPC/Levy, Inc.*, 994 F. Supp. 988, 990 (N.D. Ill. 1998) (citing *Board of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E. 2d 580, 591 (1989)).

Plaintiff responds by arguing that the Complaint alleges Riddle made false representations as to the likelihood of approval for aspects of the construction process. Plaintiff's Complaint included the specific dates for when the verification records were submitted and denied. Further, Plaintiff alleged that Riddle made numerous misrepresentations with respect to obtaining exemptions from Gensler, stating that he had already obtained exemptions when he knew that to be untrue.

12

Riddle had a duty to communicate accurate information because he was in the business of supplying information for the guidance of others in their business transactions. *Fremont Fin. Corp.*, 994 F. Supp. at 991 (citing *Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 475 n. 2 (7th Cir. 1997)) ("Illinois courts imply a duty to communicate accurate information in situations involving one who in the course of his business or profession supplies information for the guidance of others in their business transactions."). Plaintiff's allegation that Riddle represented that he had already obtained approvals for exemptions to the specifications, when he in-fact had not, is sufficient to constitute a false statement of material fact and his carelessness or negligence in ascertaining the truth or falsity of the statement. Additionally, by representing that exemptions had been granted, Riddle intended to induce Davis and the contractors to go forward with the construction. Davis alleges that it was required to replace the ACM flashing, paint, window tint, and lighting, thus satisfying the reliance and damages elements. Defendant's Motion is therefore denied with respect to Plaintiff's negligent misrepresentation claim.

*(d) Illinois Consumer Fraud and Deceptive Practices Act*

Defendant argues that Plaintiff does not have standing to bring a claim under the Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 *et seq.*, because Davis is not a consumer under the Act and the alleged conduct does not meet the required "consumer nexus" test. Doc. 14, at 23. In response, Plaintiff argues that it meets the definition of a consumer, and that Defendant's misrepresentations regarding the likelihood and status of exemptions went beyond merely breaching a contract. According to Plaintiff, those misrepresentations "go to whether he ever could do what he promised." Doc. 16, at 21.

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, a plaintiff must show "(1) a deceptive act or practice by the defendant; (2) the

defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E. 2d 1281, 1290 (1st Dist. 2013); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584, 593 (1996). The Act "does not apply to every breach of contract between two parties, even with the 1990 amendment allowing plaintiffs to recover damages without showing an effect on consumers generally." *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1369 (N.D. Ill. 1996). Thus, "where a plaintiff attempts to allege a violation of the Consumer Fraud Act in a case which appears on its face to involve only a breach of contract, the relevant inquiry is 'whether the alleged conduct ... implicates consumer protection concerns.' " *Id*., citing *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 654 N.E. 2d 1109, 1116 (2d Dist. 1995).

     Here, Davis is a consumer within the meaning of the Act because it "purchase[d] or contract[ed] for the purchase of merchandise not for resale in the ordinary course of [its] trade or business but for [its own] use." 815 ILCS 505/1(e); *Lefebvre*, 946 F. Supp. at 1369. Moreover, the Act's definition of "merchandise" includes services. 815 ILCS 505/1(b). Because Riddle is in the business of providing information services, and Davis purchased those services for its own use, Riddle falls within the meaning of the Act. Finally, Plaintiff alleges that Riddle engaged in deceptive practices by making misrepresentations about his ability to obtain approvals for exemptions, and those deceptive practices caused Plaintiff to incur significant costs to fix the construction defects. These alleged misrepresentations are sufficient to "implicate consumer protection concerns." *Lefebvre*, 946 F. Supp. at 1369. Accordingly, Defendant's Motion to Dismiss is denied with respect to Plaintiff's Illinois Consumer Fraud Act claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion [17] for Leave to File is GRANTED and the Motion [14] to Dismiss is GRANTED as to Count 2 of Plaintiff's Complaint and DENIED as to the remaining claims.

Signed on this 3rd day of October, 2017.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge